Filed 3/20/25  P. v. Jones CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B334961 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A982795) |
| v. | |
| RONALD LEE JONES, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Karla D. Kerlin, Judge.  Reversed.

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Heidi Salerno, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

The Legislature amended Penal Code[1] section 189 in 2018 to narrow the felony-murder rule.  (Stats. 2018, ch. 1015.)  Under current law, murder committed in the perpetration or attempted perpetration of certain felonies including robbery, the underlying felony at issue in this appeal, "is murder of the first degree." (§ 189, subd. (a).)  Someone who participates in a robbery in which a death occurs but who is not the actual killer can be liable for murder if, "with the intent to kill," he or she "aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree." (*Id*., subd. (e)(2).)  That leads to the following question that has divided the Courts of Appeal and is pending before our Supreme Court:  Should one read the requirement that the defendant act along with the actual killer "in the commission of murder in the first degree" to mean that the defendant must aid in the commission of the murder itself?  Or, because a murder occurring during the perpetration of a robbery "is murder of the first degree" (*id*. subd. (a)), is it sufficient that a defendant with the intent to kill aided only in the commission of the robbery that resulted in the victim's death?  (See, e.g., *People v. Kelly* (2024) 105 Cal.App.5th 162 [holding the required actus reus under § 189, subd. (e)(2) is aiding in the murderous act], review granted Nov. 26, 2024, S287341; *People v. Lopez* (2024) 104 Cal.App.5th 616 [holding the required actus reus under § 189, subd. (e)(2) is participation in the underlying felony] (*Lopez II*), review granted Nov. 13, 2024, S287162; *People v. Morris* (2024) 100 Cal.App.5th

---

[1] Further unspecified statutory references are to the Penal Code.

1016 [same], review granted July 17, 2024, S284751; *People v. Lopez* (2023) 88 Cal.App.5th 566 [same] (*Lopez I*).)

In this case, a jury convicted Ronald Lee Jones[2] in 1990 of robbery and first degree murder and found that Jones personally used a firearm in committing both crimes. The jury also found true a robbery-murder special circumstance. In 2021, Jones sought resentencing pursuant to section 1172.6[3] based on the changes to section 189's felony-murder requirements. The superior court denied Jones's petition at the prima facie stage, believing the record of conviction demonstrated the jury found Jones guilty of murder under a currently valid theory.

As we discuss below, the jury's true finding on the special circumstance allegation irrefutably establishes that Jones intended to kill and, thus, had the requite mens rea under current law for murder. If the required actus reus is only aiding in the robbery, Jones failed to establish a prima facie case because the jury convicted Jones of committing the robbery that resulted in the victim's death. If the required actus reus is aiding in the murder itself, then the record of conviction does not foreclose the possibility of relief and Jones was entitled to an evidentiary hearing.

Pending clarification from the Supreme Court, we join with *Kelly* in holding section 189, subdivision (e)(2) requires that a

---

[2] Jones is also known as Ronald Earl Legardy.

[3] Section 1172.6 was originally codified as section 1170.95. The Legislature renumbered the statute as section 1172.6, with no change in text, effective June 30, 2022. (Stats. 2022, ch. 58, § 10.) For ease of reference, we use the current citation throughout.

nonkiller defendant aid in the killing.  The jury did not make that finding here, and Jones thus made a prima facie showing of entitlement to relief.  We therefore reverse and remand for the issuance of an order to show cause and an evidentiary hearing.

## BACKGROUND

### A.    The Record of Conviction

The record of conviction for Jones in our appellate record includes the charging documents, a partial handwritten docket, the parties' closing arguments, the jury instructions, the verdicts, and the direct appeal opinion.[4]

#### 1.    *The Amended Information*

An amended information filed September 27, 1990, charged Jones with murdering and robbing Peter Zhao (counts 1 and 2) on January 30, 1989.  It alleged that in committing each crime, Jones personally used a firearm within the meaning of sections 1203.06, subdivision (a)(1) and 12022.5, subdivision (a).  It further alleged that Jones murdered Zhao while Jones was engaged in the commission of a robbery within the meaning of section 190.2, subdivision (a)(17), and that Jones had been released on bail when he committed the murder and robbery.  The amended information alleged three other counts unrelated to this appeal.  Because the People refer to it in their brief, we note that count 5 charged Jones with an August 15, 1988 assault with

---

[4] The abstract of judgment in the record does not concern the counts at issue in this appeal.  We consider our prior appellate opinion only for procedural history; we do not consider the facts recited therein for their truth.  (§ 1172.6, subd. (d)(3); *People v. Bratton* (2023) 95 Cal.App.5th 1100, 1113.)

4

a deadly weapon and force likely to produce great bodily injury upon a victim who was not Zhao.

2. *Closing Arguments*

During closing argument, the People explained that the jury could convict Jones of first degree murder under either a theory of willful, deliberate and premeditated murder or felony murder. The prosecutor stated, "according to the felony[-]murder rule, the unlawful killing of a human being, . . . which occurs during the commission of the crime of robbery i[s] murder in the first degree when the perpetrator had a specific intent to commit such crime, not the specific intent to commit murder, the specific intent to commit robbery." "So you have a killing that occurred during the commission of a robbery. Whether the defendant, according to the felony[-]murder rule, intended to do that, whether it was an accident, whether it was intentional, is irrelevant. Under that theory, it is murder in the first degree." The prosecutor did not discuss the special circumstance allegation.

Defense counsel argued it was not Jones but another individual who committed the killing and the robbery—in other words that Jones was not involved at all. Neither party referred to an accomplice, coconspirator, a second perpetrator along with Jones, or any aiding or abetting theory during their closing arguments. Defense counsel did suggest another culprit, arguing that police encountered a man other than Jones in the vicinity of the crime scene. Defense counsel said the police took that man to the police station, but "we don't know what happened to him."

### 3. *The Jury Instructions*

As pertinent here, the trial court instructed the jury on deliberate and premediated murder, felony murder, felony-murder special circumstances, and personal use of a firearm.

Then-CALJIC No. 8.21, the felony-murder instruction, stated, "The unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs [during the commission . . . of the crime] [as a direct causal result] of [r]obbery is murder in the first degree when the perpetrator had specific intent to commit such crime. [¶] The specific intent to commit [r]obbery and the commission or attempted commission of such crime must be proved beyond a reasonable doubt." (Third, fourth, and fifth brackets added.)

As given, the introductory special circumstances instruction, a version of CALJIC No. 8.80, provided, "If you find [the] . . . defendant in this case guilty of murder in the first degree, you must then determine if [one or more of] the following special circumstance[s] [is] . . . true or not true: to wit the murder was committed while the [illegible] was engaged in the crime of [r]obbery." (Fifth and sixth brackets added.) The instruction then had a portion redacted, including instructions relating to aiding and abetting.[5] The instruction further stated, "If you find

_____

[5] The redacted portion stated, "[If you find beyond a reasonable doubt that the defendant was [a co-conspirator] [or] [an aider or abettor] [either [the actual killer] [a co-conspirator] or an aider or abettor, but you are unable to decide which], then you must also find beyond a reasonable doubt that the defendant with intent to kill [participated as a co-conspirator with] [or] [aided [and abetted]] an actor in commission of the murder in the

6

beyond a reasonable doubt that the defendant was the actual killer, you need not find that the defendant intended to kill a human being in order to find the special circumstance to be true."

The special circumstance instruction relating to murder in the commission of a robbery, then-CALJIC No. 8.81.17, stated, "To find that the special circumstance, referred to in these instructions as murder in the commission of [a r]obbery, is true, it must be proved: [¶] [1a. The murder was committed while [the] [a] defendant was [engaged in] in [*sic*] the [commission] . . . of a [r]obbery.] [¶] . . . [¶] [2. The murder was committed in order to carry out or advance the commission of the crime of [r]obbery . . . . In other words, the special circumstance referred to in these instructions is not established if the . . . [r]obbery was merely incidental to the commission of the murder.]" (First, second, seventh, and ninth to fourteenth brackets added.)

The trial court instructed the jury concerning personal use of a firearm as follows: "It is alleged [in [c]ount[s] 1 [and] 2] that the defendant . . . [Jones] personally used a firearm during the commission of the crime[s] charged. [¶] If you find the defendant

---

first degree, in order to find the special circumstance to be true.] [On the other hand . . . .]" (CALJIC No. 8.80, pre-June 6, 1990.) After "[o]n the other hand," the instruction stated the portion that the court provided—to wit: "if you find beyond a reasonable doubt that the defendant was the actual killer, you need not find that the defendant intended to kill a human being in order to find the special circumstance to be true." (*Ibid*.)

The Legislature amended section 190.2, effective June 6, 1990, to include defendants who acted as a major participant and with reckless indifference to human life. Although Jones was tried in November 1990, the trial court provided a version of CALJIC No. 8.80 printed in December 1988.

7

guilty of [one or more] of the crime[s] charged [redacted text], you must determine whether the defendant personally used a firearm in the commission of such felony[ies].  [¶] . . .  [¶]  The term 'used a firearm,' as used in this instruction, means to display a firearm in a menacing manner, intentionally to fire it, or intentionally to strike or hit a human being with it." (CALJIC No. 17.19; second, fourth, fifth, seventh, tenth, twelfth, and thirteenth brackets added.)

### 4.    *Verdict, Sentencing, and Direct Appeal*

The jury convicted Jones of murder in the first degree but did not specify whether it based its finding on a theory of premeditated murder or felony murder.  It also convicted Jones of second degree robbery, found true the robbery-murder special circumstance allegation, and found that in committing both the murder and robbery, Jones personally used a firearm.  The trial court sentenced Jones to state prison for life without the possibility of parole for murder and stayed the robbery sentence. In 1994, this court affirmed the judgment.  (*People v. Legardy* (Jan. 31, 1994, B061752) [nonpub. opn.].)

## B.    Changes to the Law of Felony Murder

In 2018, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015), which as relevant here,[6] "limited the class of persons liable for felony murder by adding section 189, subdivision (e).  Under current law, '[a] participant in the perpetration or attempted perpetration of [certain enumerated felonies, including robbery] in which a death

---

[6] The parties do not dispute that Jones was not prosecuted under the natural and probable consequences doctrine.  We thus focus our analysis on felony murder.

8

occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted . . . or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [s]ection 190.2.' (§ 189, subd. (e)(1)-(3).)" (*People v. Garcia* (2022) 82 Cal.App.5th 956, 965.)

Senate Bill No. 1437 also enacted a procedure for those convicted of murder under prior law to seek retroactive relief. (*People v. Lewis* (2021) 11 Cal.5th 952, 957.) Pursuant to section 1172.6, "the process begins with the filing of a petition declaring that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to [s]ection 188 or 189' made by Senate Bill [No.] 1437. [Citation.] The trial court then reviews the petition to determine whether a prima facie showing has been made that the petitioner is entitled to relief. [Citation.]" (*People v. Wilson* (2023) 14 Cal.5th 839, 869.) " ' "[T]he court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citations.]" (*People v. Lewis, supra*, at p. 971.) On the other hand, " '[i]f the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition. [Citations.]' [Citation.]" (*People v. Wilson, supra*, at p. 869.)

## C.    Jones's Resentencing Petition

It appears that sometime in 2021 Jones sought to file a petition for resentencing.  On December 5, 2022, the superior court issued a minute order explaining Jones had inquired as to the status of his resentencing request.  The court responded it did not have the request and asked Jones to provide it.  On January 4, 2023, the court indicated it had received Jones's section 1172.6 petition and appointed counsel for Jones.  The record does not include a copy of the petition, and the clerk of the superior court could not locate it.[7]

The People opposed Jones's request, arguing the jury instructions and closing arguments demonstrated that the only theory presented to the jury was that Jones was the actual killer.

At a September 20, 2023 hearing on the petition, the court stated it had reviewed the handwritten docket, the direct appeal opinion, the jury instructions, the verdict forms, and closing arguments.  It observed the jury had been given a special circumstances instruction with "aiding and abetting language crossed out."  After indicating it was considering the petition at the prima facie stage, the court stated, "Based on my review, [the jury] was not instructed on natural and probable consequences or on aiding and abetting.  [Jones] was convicted of a murder as the actual killer or actual perpetrator.  He was the only participant.

---

[7] The parties argue and we concur that notwithstanding the missing petition, we should decide this matter on the merits in the interest of judicial economy.  The trial court did not inform Jones that it could not decide the petition due to missing information and, in any event, section 1172.6, subdivision (b)(3) permits the court to proceed on the petition if the missing information is readily ascertainable from the record.

Therefore, he remains convicted on a still viable legal theory, and as a matter of law, he is not entitled to resentencing relief under . . . section 1172.6 as he was the actual killer. While there was a felony murder, he appears to be the only participant and the person who is liable for killing the victim. For that reason, [Jones] is not entitled to relief . . . . He has not met his burden of establishing a prima facie case, and the petition is denied."

Jones timely appealed.

## DISCUSSION

### A. General Legal Principles and Standard of Review

"The record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless. This is consistent with the statute's overall purpose: to ensure that murder culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process. [Citation.]" (*People v. Lewis, supra,* 11 Cal.5th at p. 971.) The record of conviction includes "the charging documents, jury instructions, verdicts, and to a limited extent any prior appellate opinion." (*People v. Lovejoy* (2024) 101 Cal.App.5th 860, 864-865.)

At the prima facie stage courts "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]" (*People v. Lewis, supra,* 11 Cal.5th at p. 972.) " 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner" ' " and denying the petition at the prima facie stage. (*Id.* at p. 971.)

11

Where a trial court denies a section 1172.6 petition based on the failure to make a prima facie case for relief, our review is de novo. (*People v. Coley* (2022) 77 Cal.App.5th 539, 545.)

**B.** **The Record Does Not Conclusively Establish the Jury Found All Elements Necessary to Convict Jones Under a Currently Valid Felony-murder Theory**

"At the prima facie stage, a court must accept as true a petitioner's allegation that he or she could not currently be convicted of a homicide offense because of changes to section 188 or 189 made effective January 1, 2019, unless the allegation is refuted by the record. [Citation.] And this allegation is not refuted by the record unless the record conclusively establishes every element of the offense." (*People v. Curiel* (2023) 15 Cal.5th 433, 463.)

Jones argues the superior court engaged in premature factfinding at the prima facie stage to conclude he was the sole perpetrator and actual killer. He contends the verdict in light of the jury instructions did not irrefutably establish that the jury convicted him under a valid murder theory—namely, that he was the actual killer or committed felony murder as an aider or abettor who, with the intent to kill, aided in the murderous act. (§§ 187, subd. (a), 189, subds. (a), (e)(1) & (2).)[8]

The People argue the record conclusively demonstrates Jones was the actual killer because (1) the trial court did not give any aiding and abetting jury instructions and the People argued

---

[8] Neither party contends the record of conviction, considered at the prima facie stage, sheds light on whether Jones was a major participant in the underlying felony and acted with reckless indifference to human life. (§ 189, subd. (e)(3).)

at trial that Jones was the sole perpetrator, (2) the jury found true the personal use allegation, and (3) the jury found Jones committed an unrelated assault with a deadly weapon or a weapon likely to cause great bodily injury six months before Zhao's murder.  The People further argue that in finding true the robbery-murder special circumstance, the jury had to find either that Jones was the actual killer or acted with the intent to kill, and that either finding demonstrates Jones is ineligible for resentencing as a matter of law.

1.     *The Record of Conviction Does Not Establish Jones Was the Actual Killer as a Matter of Law*

The People observe that the trial court did not instruct the jury pursuant to any aiding and abetting theory.  Indeed, the amended information, the entirety of the jury instructions, the closing arguments, and the verdict form do not refer to an accomplice or any aiding and abetting theory.  That absence, however, does not irrefutably demonstrate at the prima facie stage that the jury convicted Jones as the actual killer.  Nor does the People's argument that Jones was the sole perpetrator.  That is because the People also argued to the jury (and the jury was so instructed) that Jones could be convicted of murder so long as he had a specific intent to commit robbery and the killing occurred during that robbery—in other words, *without* Jones being the actual killer.  Further, the defense closing argument pointed to evidence that the police had apprehended another individual near the crime scene, suggesting someone else could have been involved in the crimes.  Thus, without weighing evidence, the record of conviction does not prove Jones was convicted as the actual killer.

13

2.  *The Finding That Jones Personally Used a Firearm Does Not Conclusively Establish He Was the Actual Killer*

The jury found Jones personally used a firearm within the meaning of sections 1203.06, subdivision (a)(1) and 12022.5, subdivision (a).  Consistent with those statutes, the trial court instructed the jury that using a firearm "means to display a firearm in a menacing manner, intentionally to fire it, or intentionally to strike or hit a human being with it."  (CALJIC No. 17.19.)  Thus, that Jones personally used a firearm does not conclusively establish he was the actual killer because it did not require any finding the firearm was discharged.  (*People v. Jones* (2003) 30 Cal.4th 1084, 1120.)

3.  *The Assault Is Not Relevant to the Murder Conviction*

The People's argument that Jones necessarily was the actual killer because the jury convicted him of assault with a deadly weapon or force likely to produce great bodily injury fares no better.  Jones committed that assault nearly six months before Zhao's robbery and murder and against a victim who was not Zhao.  Thus, the jury's assault conviction has no bearing on Zhao's murder.

4.  *The Special Circumstance Finding Does Not Conclusively Establish Jones Was Convicted Under a Currently Valid Felony-murder Theory*

Pursuant to the special circumstance instruction, CALJIC No. 8.80, the trial court instructed the jury, "If you find beyond a reasonable doubt that the defendant was the actual killer, you need not find that the defendant intended to kill a human being in order to find the special circumstance to be true."  The People argue that because the jury found the special circumstance true,

14

Jones is guilty of felony murder under a currently valid theory as a matter of law.

Jones first contends that, because the numbered list of elements in CALJIC No. 8.81.17 did not include that the jury needed to find he was the actual killer or intended to kill as described in CALJIC No. 8.80, the jury likely did not make either finding.

In evaluating how the jury might have interpreted the instructions, we consider the instructions together as a whole, presume jurors understand and correlate all of the instructions, and presume the jurors followed the court's instructions. (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1255-1256.) Accordingly, although CALJIC No. 8.81.17 provided a numbered list, CALJIC No. 8.80 also directed the jury that in order to find the special circumstance true, it needed to find beyond a reasonable doubt that Jones was the actual killer or had an intent to kill. The instructions do not conflict, and Jones does not explain why the jury would have entirely ignored one instruction in favor of the other.

Jones next argues the jury may not have read the introductory special circumstance instruction to require that it find either that he was the actual killer or had the intent to kill. He observes that in *People v. Letner and Tobin* (2010) 50 Cal.4th 99, the Supreme Court concluded CALJIC No. 8.80 was ambiguous. In contrast to the truncated instruction here, the court in *Letner and Tobin* instructed the jury, " 'If you find beyond a reasonable doubt that defendant was either the actual killer, or an aider and abettor, but you are unable to decide which, then you must also find beyond a reasonable doubt that the defendant intended to either kill a human being, or to aid

15

another in the killing of a human being in order to find the special circumstance to be true. [¶] On the other hand, if you find beyond a reasonable doubt that the defendant was the actual killer, you need not find that the defendant intended to kill a human being in order to find the special circumstance to be true.'" (*Id*. at p. 180, italics & fn. omitted.) The court observed, "The jury was told that if it determined one of the defendants was the actual killer, intent to kill was not required, and that if it could not decide whether one of the defendants was the actual killer or an aider and abettor, it must find intent to kill in order to make a true finding. The jury, however, was not informed what was required in the event the jury determined that a particular defendant was an aider and abettor. The omission of this third alternative made the instruction ambiguous." (*Id* at p. 181, fn. omitted.)

The three alternatives identified in the *Letner and Tobin* instruction—actual killer, aider or abettor, or either the aider and abettor or the actual killer but unclear which—were not provided to Jones's jury. The instruction here does not mention an aider and abettor at all and thus lacks the ambiguity of the instruction at issue in *Letner and Tobin*. Jones's jury thus had only two choices: find he was the actual killer or was someone who acted with the intent to kill. In that regard, the instruction here more closely aligns with the one given in *People v. Harden* (2022) 81 Cal.App.5th 45. In *Harden*, the court instructed the jury, " 'If you are satisfied beyond a reasonable doubt that the defendant actually killed a human being, you need not find that the defendant intended to kill in order to find the special circumstance to be true.'" (*Id*. at p. 54, italics omitted.) As *Harden* observed, "By negative inference, a defendant who was

16

not the actual killer could not be guilty of the felony[-]murder special circumstance unless the jury also found a specific intent to kill."**9** (*Id*. at p. 55, fn. 8.)

We thus conclude that in finding true the special circumstance, the jury found either that Jones was the actual killer or had the intent to kill. As we cannot tell which of these two the jury found, at the prima facie stage we presume it was the lesser finding of intent to kill.

As a fallback, Jones argues that a finding he intended to kill is insufficient for liability under section 189, subdivision (e)(2), because "a person who is not the actual killer must both have a certain mental state (mens rea) and have engaged in a specified act (actus reus) to be convicted of felony murder under the amended statute." Jones describes the required actus reus as assisting in the killing, not simply the underlying felony.

" 'When interpreting statutes, we begin with the plain, commonsense meaning of the language used by the Legislature. [Citation.] If the language is unambiguous, the plain meaning controls.' [Citation.]" (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1131.) "If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . ." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.) Our role "is simply to ascertain and

---

**9** Jones argues non-lawyer jurors would have had difficulty understanding the negative inference. He contends, "[J]urors should not engage in parsing of ambiguous instructions to draw *any* inferences of *law*, negative or otherwise." As stated in the text, however, the instruction does not suffer from the ambiguity identified in *Letner and Tobin*. Nor does it require an inference that can only be made by persons with legal training.

declare what the statute contains, not to change its scope by reading into it language it does not contain or by reading out of it language it does." (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 253.)

We agree with *Kelly*'s analysis that by its plain terms section 189, subdivision (e)(2) requires a nonkiller defendant to aid in the killing.[10]  That statute "speaks to the situation where the defendant intends to kill but is not the actual killer.  In that scenario, the statute says the defendant must assist the killer *in the commission of murder in the first degree* to be liable for felony murder.  It does not say the defendant need only assist the killer *in the commission of the underlying felony*." (*People v. Kelly*, *supra*, 105 Cal.App.5th at p. 172.)

*Kelly* observed, "Whereas the actus reus requirement of section 189[, subdivision ](e)(3) is phrased in terms of participation in the 'underlying felony,' section 189[, subdivision ](e)(2) speaks of assisting the commission of 'murder in the first degree.'  The use of different wording to convey the actus reus requirements for these subdivisions is significant.  Indeed, the law is well established that when 'the Legislature uses materially different language in statutory provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a difference in meaning.' [Citation.]" (*People v. Kelly*, *supra*, 105 Cal.App.5th at p. 172.)  "We cannot subscribe to an interpretation of section 189,

---

[10] As previously stated, section 189, subdivision (a) provides, "All murder that is . . . committed in the perpetration of" various enumerated felonies including robbery "is murder of the first degree."

18

subdivision (e) that treats materially different terms as if they meant the same thing."  (*Ibid*.)

Further, the plain language of section 189, subdivision (e)(2) does not state only that the participant in the perpetration of the felony have "the intent to kill."  Rather that subdivision requires, "The person was not the actual killer, but, with the intent to kill, *aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree*."  (§ 189, subd. (e)(2), italics added.)  Reading the provision as requiring only the intent to kill "renders meaningless the entire 21-word actus reus requirement in section 189[, subdivision ](e)(2).  The Legislature 'does not engage in idle acts, and no part of its enactments should be rendered surplusage if a construction is available that avoids doing so.'  [Citation.]" (*Lopez I*, *supra*, 88 Cal.App.5th at p. 585 (dis. opn. of Raphael, J.).)

Indeed, the opening paragraph of section 189, subdivision (e) "makes it clear that assistance in the commission of a qualifying felony is a foundational requirement for *all* felony murders.  It states, 'A participant in the perpetration or attempted perpetration of a [qualifying] felony . . . in which a death occurs is liable for murder only if one of the following is proven . . . .'  [Citation.]" (*People v. Kelly*, *supra*, 105 Cal.App.5th at p. 173.)  "This wording indicates that *something more* than mere assistance in the commission of the felony is required to satisfy the actus reus requirement in section 189[, subdivision ](e)(2), otherwise the language in that provision would be superfluous.  That *something more* is spelled out in the statute.  In addition to requiring the defendant to assist the underlying felony, the statute requires the defendant to assist the

19

actual killer in the commission of first degree murder. (§ 189[, subd. ](e)(2).) To avoid redundancy, that must mean assisting the killer in the commission of the murderous act itself, not just the underlying felony." (*Ibid.*)

The model jury instruction corroborates this reading. Under CALCRIM No. 540B, a jury today would first have to find the four elements that establish traditional felony-murder liability. The jury would need to find that Jones aided and abetted a robbery, that he intended to aid and abet a robbery, that his cohort committed the robbery, and that his cohort caused a death during the robbery. However, tracking the statute, CALCRIM No. 540B then states that to establish guilt under section 189, subdivision (e)(2), the jury must *also* find "5A. The defendant intended to kill; [¶] AND [¶] 5B. The defendant (aided and abetted[,] . . . [or] assisted) the perpetrator in the commission of first degree murder." (CALCRIM No. 540B.) Given the prior language requiring a finding that the defendant acted in connection with the underlying felony, element 5B would be unnecessary if aiding in the commission of murder meant only aiding in the underlying felony.

This reading of section 189, subdivision (e)(2) "accords with the Legislature's purpose of restricting guilt for felony murder to better accord with an individual's culpability. A direct aider of a killing can be as responsible as the killer. The author of Senate Bill No. 1437 identified such a person in characterizing the bill's purpose as ' "to restore proportional responsibility in the application of California's murder statute reserving the harshest punishments for *those who intentionally planned* or actually committed the killing." ' (Assem. Com. on Public Safety, Rep. on Sen. Bill No. 1437 (2017-2018 Reg. Sess.), as amended May 25,

20

2018, p. 4, italics added.)" (*Lopez I*, *supra*, 88 Cal.App.5th at p. 583 (dis. opn. of Raphael, J.).) "[T]he section 189[, subdivision ](e)(2) actus reus requirement accordingly could exclude some of those with minor roles in the underlying felony and no direct involvement in the killing." (*Ibid.*)

*Lopez I, Lopez II*, and *Morris* reached a different conclusion, each holding that section 189, subdivision (e)(2) requires only that the participant in the underlying felony harbored an intent to kill. (*Lopez II*, *supra*, 104 Cal.App.5th 616; *People v. Morris*, *supra*, 100 Cal.App.5th 1016; *Lopez I*, *supra*, 88 Cal.App.5th 566.) Part of their reasoning is that the Supreme Court already resolved the issue in *People v. Dickey* (2005) 35 Cal.4th 884. (*Lopez II*, *supra*, at p. 622; *People v. Morris*, *supra*, at pp. 1025-1026; *Lopez I*, *supra*, at p. 577.) "At issue there was the meaning of nearly identical statutory language formerly applicable to felony-murder special-circumstance findings: ' "Every person whether or not the actual killer found guilty of intentionally aiding, abetting . . . or assisting any actor in the commission of murder in the first degree shall . . . ." ' [Citation.] The defendant asserted this language required the prosecution to prove he assisted the killings themselves, not just the underlying felonies. [Citation.] The high court rejected the argument . . . ." (*People v. Morris*, *supra*, at p. 1026, italics omitted.) The Supreme Court explained that the language under section 190.2 former subdivision (b) that stated, " 'aiding, abetting . . . or assisting any actor in the commission of murder in the first degree' " "[was] not helpful to [the] defendant because, under the [then] felony-murder doctrine, he *was* found guilty of aiding or abetting first degree murders. All persons aiding or abetting the commission of burglary or robbery are guilty of first degree

21

murder when one of them kills while acting in furtherance of the common design." (*People v. Dickey*, *supra*, 35 Cal.4th at p. 900, italics omitted; see *Lopez II*, *supra*, at p. 622; *People v. Morris*, *supra*, at p. 1026; *Lopez I*, *supra*, at pp. 577-578.) In other words, "aiding 'the actual killer in the commission of murder in the first degree' " is a term of art referring to aiding the actual killer in the commission of the underlying felony. (*People v. Morris*, *supra*, at p. 1025.)

However, as explained in *Kelly* and the *Morris* and *Lopez I* dissents, *Dickey* depended on the old felony-murder rule "that swept up all manners of assistance within its ambit" in holding that "the language in former section 190.2, subdivision (b) applied whenever the defendant aided and abetted a felony that led to the victim's death." (*People v. Kelly*, *supra*, 105 Cal.App.5th at p. 174, citing *People v. Dickey*, *supra*, 35 Cal.4th at p. 900; see *People v. Morris*, *supra*, 100 Cal.App.5th at p. 1033 (dis. opn. of Moore, J.); *Lopez I*, *supra*, 88 Cal.App.5th at p. 586 (dis. opn. of Raphael, J.).) Since *Dickey*, "the felony-murder rule has undergone a significant transformation." (*People v. Kelly*, *supra*, at p. 174.) In particular, the basis on which *Dickey* relied—that all persons who aid and abet the commission of a robbery in which a killing occurs are guilty of first degree murder—is no longer true. (See § 189, subd. (e).)

*Morris* further suggests that dicta in *People v. Curiel*, *supra*, 15 Cal.5th 433 supports its holding. *Curiel* stated, "[S]uppose the jury . . . made findings on all of the other elements supporting felony murder under section 189 as amended, including (1) the commission or attempted commission of a felony enumerated in that statute and (2) the death of a person during the commission or attempted commission of the enumerated

22

felony.  In that case, if the jury additionally found intent to kill, it would 'ordinarily be dispositive' because the jury's findings would conclusively establish all of the elements of felony murder under current law.  ([*People v.*] *Strong*[ (2022) 13 Cal.5th 698,] . . .715; see § 189, subd. (e)(2).)  Considered together, the jury's findings would completely refute a petitioner's allegation that he or she could not currently be convicted of murder because of changes to sections 188 and 189." (*People v. Curiel, supra*, at p. 464.)

*Morris* overlooks that *Curiel* was a natural and probable consequences case, not a felony-murder case.  The Supreme Court held the jury's intent to kill finding as part of the gang-murder special circumstance was not sufficient to establish the requisite mens rea for direct aiding and abetting or implied malice.  *Curiel* did not consider the actus reus element necessary for felony murder under section 189, subdivision (e)(2).  It merely described a hypothetical wherein an intent to kill finding might be sufficient if we "[s]uppose the jury . . . made findings on all of the other elements supporting felony murder under section 189 as amended, including," but not necessarily limited to, the commission of an enumerated felony and death during the commission of that felony. (*People v. Curiel, supra*, 15 Cal.5th at pp. 461, 464 ["[t]he amendments to [§] 189, concerning the felony-murder rule, are inapplicable here"].)  It is axiomatic that cases are not authority for propositions not considered, and thus we do not consider *Curiel* dispositive as to the elements required under section 189, subdivision (e)(2). (*People v. Baker* (2021) 10 Cal.5th 1044, 1109.)

*Lopez II*, *Morris*, and *Lopez I* contend that our reading of section 189, subdivision (e)(2) is improper because it "makes it easier for the prosecution to obtain a conviction for defendants

23

who harbored the *less culpable* mindset of reckless indifference to human life than for those who acted with express malice. For the former class of defendants, the prosecution need only prove they played a major role in the felony . . . ." (*Lopez I, supra*, 88 Cal.App.5th p. at 579; see also *Lopez II, supra*, 104 Cal.App.5th at pp. 622-623; *People v. Morris, supra*, 100 Cal.App.5th at p. 1027.)

This argument presumes that in order to have aided and abetted a killing, a defendant's quantum of involvement must be at least as substantial as the major participant's involvement in the underlying felony. But this is not necessarily so. Additionally, as *Kelly* observes, a defendant who has the intent to kill, takes no action to aid the killing, but acts as the getaway driver "could actually be *less* culpable than someone whose participation in the felony was so considerable that it amounted to reckless indifference to human life for purposes of section 189[, subdivision ](e)(3)." (*People v. Kelly, supra*, 105 Cal.App.5th at p. 175.) However, under the *Lopez II*, *Morris*, and *Lopez I* interpretation, that getaway driver would be liable for felony murder.

*Morris* and *Lopez I* also point to the Legislature's intent in passing Senate Bill No. 1437 to support their position. *Lopez I* explains, "The whole purpose of Senate Bill [No.] 1437 was to stop the practice of imputing malice to defendants to justify convicting them of murder. . . . [B]ecause express malice is an element of section 189, subdivision (e)(2) felony-murder liability, there is no reason to interpret the actus reus requirement as anything different than what the felony-murder actus reus requirement was before Senate Bill [No.] 1437—'aiding and abetting the underlying felony or attempted felony that results in

24

the murder.' [Citation.]." (*Lopez I, supra*, 88 Cal.App.5th at p. 578.) Further, "[a]mong the Legislature's expressed purposes for adopting the statutory amendments was 'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1.)" (*People v. Morris, supra*, 100 Cal.App.5th at p. 1027.)

However, as stated above, in the plain language of section 189, subdivision (e)(2), the Legislature expressly stated that more than just the intent to kill was required. Indeed, the bill's author was also concerned about long sentences for people who had " ' "very peripheral involvement in the crime that resulted in a death." ' " (*People v. Vang* (2022) 82 Cal.App.5th 64, 86, citing Assem. Com. on Public Safety, Rep. on Sen. Bill No. 1437, *supra*, as amended May 25, 2018, p. 4.) Permitting liability for murder based on a bad thought (having an intent to kill) unaccompanied by any action to manifest that particular thought cannot be squared with the legislative intent.

Thus, reading section 189, subdivision (e)(2) to require only that the accomplice have an intent to kill and aid in the underlying felony is inconsistent with its plain language. Rather, that subdivision requires the prosecution to prove beyond a reasonable doubt that the defendant harbored an intent to kill and aided in the killing. Here, the jury's verdict does not demonstrate that the jury found that actus reus requirement.

Because the record of conviction does not conclusively establish every element required under a currently valid murder theory, the trial court erred in denying Jones's petition at the prima facie stage. (*People v. Curiel, supra*, 15 Cal.5th at p. 463.)

## DISPOSITION

The trial court's order denying Jones's resentencing petition at the prima facie stage is reversed.  Upon remand, the trial court shall issue an order to show cause.

NOT TO BE PUBLISHED


WEINGART, J.


We concur:



ROTHSCHILD, P. J.



M. KIM, J.